**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

RICHARD K. LANPHER,

Plaintiff,

v.

METROPOLITAN LIFE INSURANCE COMPANY and BANK OF AMERICA, *successor to Merrill Lynch & Co., Inc., as employer and plan administrator of The Merrill Lynch & Co., Inc., Supplemental Long Term Disability Plan*,

Defendants.

Civil No. 12-2561 (JRT/JSM)

**MEMORANDUM OPINION AND ORDER ON DAMAGES**

---


Katherine L. MacKinnon and Sarah J. Demers, **LAW OFFICES OF KATHERINE L. MACKINNON, P.L.L.C.**, 3744 Huntington Avenue, St. Louis Park, MN 55416, for plaintiff.

William D. Hittler, **NILAN JOHNSON LEWIS PA**, 120 South Sixth Street, Suite 400, Minneapolis, MN 55402, for defendant Metropolitan Life Insurance Company.

Wood W. Lay, **WINSTON & STRAWN LLP**, 100 North Tryon Street, Charlotte, NC 28202; and Blake J. Lindevig, **FAEGRE BAKER DANIELS LLP**, 90 South Seventh Street, Suite 2200, Minneapolis, MN 55402, for defendant Bank of America.


Plaintiff Richard K. Lanpher ("Lanpher") was an employee at Merrill Lynch (succeeded by Defendant Bank of America, referred to as "Merrill Lynch" throughout), and was eligible for his employer's Basic Long Term Disability Benefits plan and Supplemental Long Term Disability ("SLTD") Benefits plan. (Mem. Op. & Order on

Cross Mots. for Summ. J. ("Order") at 1-2, Sep. 29, 2014, Docket No. 77.)[1] To enroll in the SLTD plan, Lanpher was required to obtain approval from the plan's insurer, Metropolitan Life Insurance Company ("MetLife"). (*Id.* at 2.) Lanpher submitted his application and received a letter from MetLife stating that he had been approved, but there is no evidence MetLife communicated this change to Merrill Lynch, and the required insurance premiums were not deducted from Lanpher's paychecks. (*Id.* at 2-3.) Lanpher sought disability benefits after he ended his employment on account of depression. (*Id.* at 2.) MetLife granted him benefits under the Basic plan, but not under the SLTD plan. (*Id.*)

Lanpher brought this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, alleging that MetLife improperly denied him benefits under the SLTD plan, and that MetLife and/or Merrill Lynch breached their fiduciary duties by failing to enroll him properly in the SLTD plan and subsequently denying him benefits on that account. (Order at 3-4.) All parties moved for summary judgment, with Lanpher moving only against MetLife. (*Id.* at 3.) This Court concluded that it was an abuse of discretion and an unreasonable interpretation of the policy document for MetLife to conclude that Lanpher was not entitled to SLTD benefits. (*Id.*) In the alternative, the Court concluded that Lanpher would be entitled to equitable relief on account of MetLife's breach of fiduciary duty. (*Id.* at 4.) Accordingly, the Court granted Lanpher's motion for partial summary judgment against MetLife. (*Id.* at 54.) The Court also ordered Lanpher and MetLife to ascertain whether any disputes exist regarding the appropriate amount of damages, and to submit letter briefs if a dispute

[1] Unless otherwise noted, the Court will cite to the CM/ECF pagination.

exists. (*Id.* at 54-55.) Both parties submitted letter briefs outlining areas of agreement and disagreement, and the Court held a hearing on May 12, 2015. (*See* Richard K. Lanpher Letter Brief ("Lanpher Letter"), Oct. 28, 2014, Docket No. 78; MetLife Letter Brief ("MetLife Letter"), Nov. 4, 2014, Docket No. 79.) Pursuant to the calculations discussed below, the Court will grant damages to Lanpher in the amount of $394,033.95.

## DISCUSSION

### I. DISPUTED BENEFITS

The parties agree on many of the elements that make up the damages amount in this case. For example, they agree that Lanpher is entitled to $75,000 in attorney's fees; on the timeframe for which Lanpher is entitled to SLTD benefits; and that MetLife is entitled to $26,471.20 for the reimbursement of premiums. (*See* Lanpher Letter at 1; *see* MetLife Letter at 1-2 & n.1; *see also id.*, Ex. 2.)

The parties dispute, however, whether Lanpher is entitled to any benefits due to the amount of deferred compensation Lanpher earned in 2006. At the hearing, Lanpher indicated that he earned two deferred compensation amounts in 2006, totaling $40,705.59.[2] The parties also dispute whether Lanpher should receive any benefits in recognition of a $30,073.68 stock-related payment Lanpher received in 2006. (*See* Lanpher Letter, Ex. D at 28.) MetLife contends that Lanpher has waived any claim to the deferred compensation and that the stock payment should not be included because the

[2] Lanpher conceded at the hearing that that the $107,218.80 in deferred compensation he **received** in 2006 should not be included in the calculation.

plan explicitly excludes "stock-based compensation" under its definition of Eligible Annual Compensation ("EAC").[3] (MetLife Letter, Ex. 1 at 5.)

Although the Court acknowledges that Lanpher only recently produced evidence of deferred compensation benefits that he **earned** in 2006, the Court will still consider that evidence and find that Lanpher has not waived any argument regarding deferred compensation. The Court must endeavor to award the correct amount of damages and will not ignore the recent submissions from Lanpher regarding deferred compensation. As a result, the Court will include in its damages calculation the $40,705.59 in deferred compensation Lanpher earned in 2006. The Court also concludes, however, that the $30,073.68 stock option payment Lanpher received in 2006, (*see* Lanpher Letter, Ex. D at 28), is "stock-based compensation" under the policy that will not be calculated, (*see* MetLife Letter, Ex. 1 at 5).

After reviewing the record, the Court will otherwise rely on the "EAC" and monthly supplemental earnings calculation provided by Lanpher in his letter, (*see* Lanpher Letter, Exs. E & F), and updated at the hearing. This calculation is supported by the 2006 payroll history Lanpher provided in his exhibits. (*See id.*, Ex. D.)

Based on the updated calculation worksheet provided by Lanpher at the hearing, and subtracting the $30,073.68 stock option payment, the Court reaches a sub-total eligible payroll amount of $300,286.76. Adding in the $40,705.59 in deferred compensation, the Court reaches an EAC amount of $340,992.35. The Court will then subtract the $60,000 in compensation that is uninsured per the SLTD policy, reaching a

[3] MetLife uses the term "Predisability Earnings" ("PDE"), which is essentially synonymous with "Eligible Annual Compensation." (*See* MetLife Letter, Ex. 1 at 4.)

supplemental earnings amount of $280,992.35. That amount, divided by twelve, results in a monthly supplemental earnings amount of $23,416.03. Sixty percent of that amount is the final monthly supplemental earnings amount: $14,049.62.

## II. INTEREST AND FINAL CALCULATION

The more complex part of the damages analysis is the determination of prejudgment interest. The parties appear to agree that Lanpher is entitled to interest pursuant to 28 U.S.C. § 1961 and, with some discrepancies, they agree to an interest rate that applies to each month's benefits. (Lanpher Letter at 1; *id.*, Ex. A; MetLife Letter at 2; *id.*, Ex. 2.) MetLife states that

> [i]nterest is calculated on [the monthly benefit amount] using the monthly Treasury Constant Maturities – 1 Year rates. As the SLTD benefit is paid at the end of each month, the payment would be subject to the interest rate in effect the following month (e.g., the benefit paid on June 30, 2008 would accrue interest at the July 2008 rate).

(MetLife Letter at 2.) Neither MetLife nor Lanpher cites any authority for this interest rate calculation.

The relevant statute states that:

> Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, **at a rate equal to the weekly average 1-year constant maturity Treasury yield**, as published by the Board of Governors of the Federal Reserve System, **for the calendar week preceding.[FN1] the date of the judgment**. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.

28 U.S.C. § 1961(a) (emphasis added).

The Eighth Circuit has stated that "28 U.S.C. § 1961 provides the proper measure for determining rates of **both prejudgment** and postjudgment interest." *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1331 (8th Cir. 1995) (emphasis added) (ERISA case); *see also Ewald v. Royal Norwegian Embassy*, No. 11-CV-2116, 2015 WL 1746375, at *21 (D. Minn. Apr. 13, 2015) (noting that, under *Mansker*, in a case arising under federal ERISA law, "[t]he question of whether interest is to be allowed, and also the rate of computation, is a question of federal law where the cause of action arises from a federal statute" (internal quotation marks omitted)).

Because Section 1961 provides the measure of interest for prejudgment interest, the language of that provision should govern the interest award in this case, as the parties appear to concede. (Lanpher Letter at 1.) In light of the language of the provision, which sets the rate based on the relevant Treasury rate from the week preceding judgment, the Court will not adopt the interest rate calculation advanced by the parties, which instead uses different rates, based on the Treasury rate during each month Lanpher should have received a benefit. "Judgment" under Section 1961 does not mean the day, week, or month the harm occurred, but instead refers to the Court's damages determination. *Wilson v. Union Pac. R.R. Co.*, 56 F.3d 1226, 1233 (10th Cir. 1995) ("The simple text of the statute resolves the issue: a prevailing party in a civil action may collect interest on 'any money judgment . . . . Such interest shall be calculated from the date of the entry of the judgment.' 28 U.S.C. § 1961(a). No ambiguity here permits multiple constructions; the date to which the statute refers is the date of entry of the money judgment."). As such, only one rate is at issue, and it is the rate from the week preceding this Order.

Decisions in this circuit support this approach. In *Tussey v. ABB Inc.*, for example, the court – citing *Mankser* – concluded that the interest rate under Section 1961 should be calculated from the week preceding judgment, not the date when the losses were due. *Tussey v. ABB Inc.*, No. 06-4305, 2012 WL 2368471, at *4-*5 (W.D. Mo. June 21, 2012); *see also Emmenegger v. Bull Moose Tube Co.*, 33 F. Supp. 2d 1123, 1125 (E.D. Mo. 1998) ("The Court erred by using the rates applicable when the various amounts became due, rather than the rate applicable immediately before the judgment.").

Indeed, in *Parke v. First Reliance Standard Life Insurance Co.* – the decision underlying the Eighth Circuit decision cited by Lanpher with respect to interest, (Lanpher Letter at 2 n.6) – this Court calculated prejudgment interest using one rate, applied to various benefit amounts from different months. *Parke v. First Reliance Standard Life Ins. Co.*, No. 99-1039, 2003 WL 131731, at *1-*2 & n.2 (D. Minn. Jan. 8, 2003), *aff'd in part, rev'd in part on other grounds*, 368 F.3d 999, 1006-09 (8th Cir. 2004) (affirming the Court's prejudgment interest calculation). The Court reached a similar conclusion in *Nelson v. Metropolitan Life Insurance Co.*, No. 07-2326, 2010 WL 153040, at *10 n.6 (D. Minn. Jan. 11, 2010).

In sum, the Court will use an interest rate calculation that comports with Section 1961. This judgment is dated August 18, 2015. The interest rate at issue, for last week, the week ending on Friday, August 14, 2015, is .39 percent.[4] The Court then calculates the interest from each of the dates listed in the two spreadsheets, until the date of judgment, compounded annually. *See* 28 U.S.C. § 1961(b). Using this calculation, the

[4] *See Selected Interest Rates (Weekly) – H.15*, Board of Governors of the Federal Reserve System (Aug. 17, 2015), http://www.federalreserve.gov/releases/h15/current/.

benefits due are $337,190.88. The total interest accrued is $8,314.27.[5] The total benefits and interest amount due is $345,505.15.

The Court will then subtract the unpaid premium amount of $26,471.20, which results in a net supplemental disability benefits amount of $319,033.95. The Court will then add $75,000 for attorney's fees, to reach a total amount due of $394,033.95. This amount comports with the SLTD policy, the relevant law, and also falls roughly halfway

---

[5] The following table shows the Court's interest calculations:

| **Date** | **Gross Benefit** | **Interest Rate** | **Back Benefit** | **Interest Accrued** |
|---|---|---|---|---|
| 6/1/2008 | $14,049.62 | 0.39% | $14,449.86 | $400.24 |
| 7/1/2008 | $14,049.62 | 0.39% | $14,445.24 | $395.62 |
| 8/1/2008 | $14,049.62 | 0.39% | $14,440.46 | $390.84 |
| 9/1/2008 | $14,049.62 | 0.39% | $14,435.69 | $386.07 |
| 10/1/2008 | $14,049.62 | 0.39% | $14,431.07 | $381.45 |
| 11/1/2008 | $14,049.62 | 0.39% | $14,426.30 | $376.68 |
| 12/1/2008 | $14,049.62 | 0.39% | $14,421.68 | $372.06 |
| 1/1/2009 | $14,049.62 | 0.39% | $14,416.91 | $367.29 |
| 2/1/2009 | $14,049.62 | 0.39% | $14,412.15 | $362.53 |
| 3/1/2009 | $14,049.62 | 0.39% | $14,407.85 | $358.23 |
| 4/1/2009 | $14,049.62 | 0.39% | $14,403.09 | $353.47 |
| 5/1/2009 | $14,049.62 | 0.39% | $14,398.48 | $348.86 |
| 6/1/2009 | $14,049.62 | 0.39% | $14,393.72 | $344.10 |
| 7/1/2009 | $14,049.62 | 0.39% | $14,389.12 | $339.50 |
| 8/1/2009 | $14,049.62 | 0.39% | $14,384.36 | $334.74 |
| 9/1/2009 | $14,049.62 | 0.39% | $14,379.61 | $329.99 |
| 10/1/2009 | $14,049.62 | 0.39% | $14,375.01 | $325.39 |
| 11/1/2009 | $14,049.62 | 0.39% | $14,370.26 | $320.64 |
| 12/1/2009 | $14,049.62 | 0.39% | $14,365.66 | $316.04 |
| 1/1/2010 | $14,049.62 | 0.39% | $14,360.91 | $311.29 |
| 2/1/2010 | $14,049.62 | 0.39% | $14,356.16 | $306.54 |
| 3/1/2010 | $14,049.62 | 0.39% | $14,351.87 | $302.25 |
| 4/1/2010 | $14,049.62 | 0.39% | $14,347.14 | $297.52 |
| 5/1/2010 | $14,049.62 | 0.39% | $14,342.55 | $292.93 |
| **TOTAL** | **$337,190.88** | | **$345,505.15** | **$8,314.27** |

between the final calculations of Lanpher and Met Life.[6] In addition, the Court will order MetLife to pay post-judgment interest on any delinquent payments. *See S.E.C. v. Brown*, No. 06-1213, 2010 WL 1780144, at *4 (D. Minn. Apr. 30, 2010) ("[Defendant] shall pay post-judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.").

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that MetLife shall pay $394,033.95 in damages plus interest to Lanpher. MetLife shall pay post-judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: August 18, 2015
at Minneapolis, Minnesota.

s/ John R. Tunheim
JOHN R. TUNHEIM
Chief Judge
United States District Court

[6] Lanpher also asks the Court to remand this case to MetLife so he can make a claim for SLTD benefits based on physical disability, versus the mental illness disability underlying these damages. MetLife argues that a remand is not appropriate, because Lanpher has waived his opportunity to make an argument based on physical disability. MetLife notes that when Lanpher received Basic benefits from MetLife due to mental illness, he failed to appeal to seek physical disability benefits. The Court agrees that Lanpher has waived this argument and will not remand the case to MetLife.